UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

LARRY D. CRAVEN, )
)
PLAINTIFF, )
)
vs. ) CASE NO. 13-CV-700-FHM
)
CAROLYN W. COLVIN, Acting )
Commissioner of the Social Security )
Administration, )
)
DEFENDANT. )

## OPINION AND ORDER

Plaintiff, Larry D. Craven, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater,* 92 F.3d 1017 (10th

---

[1] Plaintiff, Larry D. Craven's application for Disability Insurance Benefits was denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) Lantz McClain was held June 20, 2012. By decision dated June 29, 2012, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on August 30, 2013. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

1

Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 993 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## Background

Plaintiff was 51 years old on the alleged date of onset of disability and 55 years old on the date of the ALJ's denial decision. [R. 21-31]. He has a 10th grade education and past work experience includes landscape worker and meat processor. [R. 18]. Plaintiff claims to have been unable to work since January 31, 2008 due to chronic pain in both shoulders, neck, back, left arm, left foot, and both hands. [R. 122].

## The ALJ's Decision

The ALJ determined that Plaintiff has severe impairments relating to cervical degenerative disc disease, status post surgery to both shoulders, status post contusions to both feet. Further, the ALJ found that Plaintiff's hypertension, mental impairments of mild depression, and history of cannabis abuse are "non-severe" impairments. [R. 12]. The ALJ also found that Plaintiff's report of hand swelling with the inability to close his

2

hands is medically non-determinable. [R. 13]. The ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform medium[2] work as defined in 20 CFR 404.1567(c). The ALJ specifically found that the Plaintiff had the ability to occasionally lift/carry 50 pounds and frequently lift/carry 25 pounds; he is able to stand and/or walk for at least 6 hours in an 8-hour workday and sit for at least 6 hours in an 8-hour workday, all with normal breaks. Plaintiff should avoid work above shoulder level. [R. 14].

The ALJ determined at step four that Plaintiff could perform his past relevant work as a landscape worker or a meat processor. At step five, the ALJ found that there are a significant number of jobs in the national economy that Plaintiff could perform with these limitations. [R. 19-20]. The case was thus decided at step four of the five-step evaluative sequence for determining whether a claimant is disabled with an alternative step five finding. See *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

## **Plaintiff's Allegations**

Plaintiff asserts that the ALJ failed to make a proper residual functional capacity (RFC) determination. [Dkt. 13, p. 2].

---

[2] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work. C.F.R. § 404.1567(c).

**Analysis**

Residual Functional Capacity Determination

Plaintiff argues that because at step two the ALJ found shoulder, neck, and foot problems were severe impairments, additional limitations should have been included in the RFC. The step two severity finding and the RFC finding involve different considerations. To find a "severe" impairment at step two requires only a threshold showing that the Plaintiff's impairment has more than a minimal effect on his ability to do basic work activities. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir.1988). A step two determination that Plaintiff's shoulder, neck, and foot problems are "severe" only allows the sequential process to proceed. It does not address the degree of work-related functional limitations resulting from the "severe" impairments. An ALJ does not err by failing to match each step two impairment to a work-related limitation in the RFC. Rather, in developing the RFC the ALJ considers all of the medical and other evidence to determine whether the record supports the existence of physical, mental, sensory, and other limitations in the ability to perform work-related functions. *See* 20 C.F.R. §§ 404.1545, 416.945. The question then is not whether the RFC contains the "severe" impairments, but whether the RFC accounts for the work-related limitations that flow from those impairments. Thus, the court finds that the ALJ's failure to incorporate each severe impairment found at step two into the RFC finding is not error.

Plaintiff argues that the ALJ ignored the findings of consultative examiner, Dr. Brad Liston, D.O.[3] because rather than restricting Plaintiff from reaching in all directions, the

---

[3] The consultative examination report and range of motion evaluation chart was signed by Casey Snodgrass, D.O., as opposed to Dr. Brad Liston, D.O.

RFC assessment only included a limitation as to work above shoulder level. [Dkt. 13, p. 3].  Plaintiff was examined by Dr. Liston on March 26, 2011 who found decreased range of motion in the cervical spine and significantly decreased range of motion of the shoulders. Although Dr. Liston noted bilateral frozen shoulder, bilateral rotator cuff injury, and cervical spondylosis, Plaintiff was capable of raising his right arm to shoulder level (90 degrees), left arm above shoulder (120/150 degrees), had full shoulder adduction bilaterally, internal rotation (30-40 degrees), and external rotation (40-50 degrees).  Plaintiff was capable of picking up and manipulating paperclips, and his bilateral grip strength was 5/5.  Plaintiff's elbow and wrist extension and rotation were within normal limits. Contrary to Plaintiff's argument, Dr. Liston did not opine, nor do his findings reflect, that Plaintiff is limited in reaching in all directions. [R. 302-307].

Plaintiff was also treated for shoulder pain by orthopedic physicians, Drs. Brian Chalkin, D.O., and David E. Nonweiler, M.D.  On September 7, 2007, Dr. Chalkin noted that after physical therapy for rotator cuff tendinitis Plaintiff was, "not having any pain.  He has full range of motion, and full function without limitation.  Today; I have released him from the clinic.  He can go about his life without restrictions.  He no longer needs any therapy." [R. 206].  Dr. Nonweiler treated Plaintiff periodically from December 2007 through March 2010 for shoulder pain.  The MRI's of Plaintiff's shoulders performed July 25, 2007 showed postoperative changes and supraspinatus tendinopathy but were otherwise normal. [R. 192-194].  Dr. Nonweiler opined that Plaintiff's pain was associated with his neck as opposed to his shoulders.  After finding he could return to work full duty with no restrictions, Plaintiff was released from his care. [R. 218].

5

Further, on the April 7, 2011 Physical Residual Functional Capacity Assessment form used by state agency medical reviewers and the box that appears under the heading "Manipulative Limitations" provides two options for checking: "limited" and "unlimited." [R. 311]. In the line marked "Reaching all directions (including overhead)," the reviewing physician, Dr. Sean Neely, D.O., checked the "limited" box. The fifth line of this subsection instructs the reviewer to "Describe how the activities checked 'limited' are impaired. Also, explain how and why the evidence supports your conclusions in item 1 through 4. Cite the specific facts upon which your conclusions are based." Dr. Neely wrote: "Overhead reaching is limited to occasional with both L and R arms." *Id.* The court finds that the ALJ's evaluation of the opinion of Dr. Liston was proper and the RFC assessment is supported by substantial evidence.

Plaintiff argues that the ALJ erred by failing to include bilateral foot limitations in the RFC determination. [Dkt. 13, p. 4]. According to Plaintiff, comments made by orthopedic surgeon, Dr. Lewis, in the record indicate an ongoing problem with his feet. Dr. Lewis' records consist of three letters written for workmen's compensation purposes. [R. 257-260]. Dr. Lewis explains he saw Plaintiff on December 18, 2007 concerning foot pain. Dr. Lewis noted Plaintiff was not in distress; had normal range of motion of the ankle, hindfoot, midfoot, and forefoot; and there were no arthritic changes, fractures, or subluxations. Dr. Lewis diagnosed Plaintiff as suffering a midfoot sprain. [R. 259-260]. Dr. Lewis advised Plaintiff that a cushion-lined, semi-rigid based foot orthosis would diminish stresses across the mid-foot. Plaintiff was again examined by Dr. Lewis on April 14, 2010. Dr. Lewis stated there was nothing from an orthopedic perspective to offer. In another letter dated November 23, 2011, Dr. Lewis notes Plaintiff returned for a prescription for orthotic shoes.

Dr. Lewis noted Plaintiff walked with a mildly antalgic gait. [R. 362]. The ALJ made note of this and observed the antalgic gate is inconsistent with the March 2011 consultative exam where no gait abnormality was noted. [R. 303]. Dr. Lewis said <u>if</u> Plaintiff is not comfortable in his shoes, he should be sent to a pedorthic store to obtain suitable shoes. <u>If</u> he is too uncomfortable to return to previous work, he should seek re-training. [R. 257]. The suggestions made by Dr. Lewis fall short of an opinion that retraining was necessary. Further, his report of the physical examination does not suggest the existence of any limitations.

The court finds Plaintiff has failed to show that the use of orthotics establishes the need for additional limitations. The court finds that the ALJ's decision demonstrates that he adequately considered the evidence and the ALJ's RFC determination is supported by substantial evidence.

Plaintiff argues that the ALJ erred by failing to provide a reviewable analysis of his treatment records and failing to state what weight he accorded to the reports of treating and examining physicians. [Dkt. 13, p. 2-3]. The ALJ thoroughly analyzed and discussed the medical evidence, including the findings of treating physicians, Drs. Chalkin, Nonweiler, Marouk, Hendricks, Blackmon, and Lewis; the findings from the diagnostic tests; and the findings of the physicians employed by the State Disability Determination Services. The decision thus demonstrates the ALJ's consideration of the medical evidence. Further, the ALJ stated that he carefully considered all of the evidence. [R. 10, 12, 14]. The Tenth Circuit has stated it will take the ALJ at his word where, as here, the entirety of the ALJ's discussion of the evidence and the reasons for his conclusions demonstrate that he adequately considered the claimant's impairments. *Wall v. Astrue,* 561 F.3d 1048, 1070

(10th Cir. 2009).

The ALJ did not specifically articulate what weight he accorded to Plaintiff's treating and examining physicians. It is, however, clear that he considered those opinions and incorporated them into the RFC. The ALJ concluded that the evidence was consistent with the RFC assessment and supported a finding that Plaintiff could perform medium work with certain restrictions, namely avoid work above shoulder level. The ALJ's decisional RFC contains the same limitations found by the Disability Determination Services physicians who reviewed Plaintiff's records and to whom the ALJ accorded some weight. [R. 18].

The ALJ's failure to specify the weight given each medical opinion is not cause for reversal of the decision. Review requires the court to use common sense, not technical perfection, as its guide. *Keyes-Zachary v. Astrue*, 695 F.3d 1156 (10th Cir. 2012). The ALJ's citation to the medical evidence satisfies the requirement that the ALJ's decision be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating sources' medical opinion and the reasons for that weight. 20 C.F.R. § 404.1527.

**Conclusion**

The court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. The court further finds there is substantial evidence in the record to support the ALJ's decision. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

SO ORDERED this 27th day of February, 2015.

_Frank H. McCarthy_
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE